CITY OF HUNTSVILLE et al.　v. McKAY et
al.　(No. 3245.)

(Court of Civil Appeals of Texas. Texarkana.
May 14, 1926.　Rehearing Granted
May 27, 1926.)

**1. Action ⊜⇒50(7).**

Whether property owner fraudulently con-
veyed property in another county to defraud
paving contractor cannot be determined in ac-
tion on paving debt.

**2. Municipal corporations ⊜⇒586—Paving con-
tractor held entitled to judgment of foreclo-
sure of lien against land in another county,
where owner of homestead assessed had no
property within county.**

Paving contractor *held* entitled to judgment
of foreclosure of his lien against land of prop-
erty owner in another county, where he had no
property within county subject to execution;
paving assessment being against homestead.

**3. Municipal corporations ⊜⇒485(2).**

Paving assessment certificates dated after
work was completed, but reciting authority of
previous proceedings of city providing for pay-
ment to contractor, *held* valid.

**4. Municipal corporations ⊜⇒586.**

Contractor, holding valid paving assessment
certificate, *held* entitled to personal judgment
against property owner, with foreclosure of at-
tachment lien, notwithstanding damage to prop-
erty not caused by failure to comply with plans
and specifications.

**5. Municipal corporations ⊜⇒356—Paving con-
tractor held bound to execute contract in good
and workmanlike manner.**

Paving contractor, under contract to do
work under particular plans and specifications,
*held* bound to execute it in good and workman-
like manner.

**6. Contracts ⊜⇒320.**

As a rule one who does merely defective
work may recover contract price, less cost of
correcting defects.

Appeal from District Court, Walker Coun-
ty; Carl T. Harper, Judge.

Action by the City of Huntsville and others
against W. E. McKay and others. Judgment
for defendants, and plaintiffs appeal. Re-
versed and rendered.

The action is against abutting property
owner on paving certificates. The city of
Huntsville is a municipal corporation organ-
ized and existing under the general laws of
Texas. The city resolved by due proceedings
of record to place a concrete pavement on
avenue K (Main street) a distance of approxi-
mately 2,300 feet. Appellee and his wife own
a lot and house, which has long been their
homestead, located at the corner of avenue
K and Fifteenth street. The property abuts
avenue K, on the west side, for a distance of
200 feet. W. A. McLendon was the contrac-

tor who did the paving under contract with
the city, and the special assessment certifi-
cates were made payable to him. The peti-
tion alleged, and the evidence shows, the exe-
cution of the certificates and the regular com-
pliance with the laws of the state, and the or-
dinances and resolutions of the city relative
to special assessments, the completion and ac-
ceptance of the paving by the city, and the
full performance of all legal requisites in fix-
ing the lien and claim of personal liability on
the assessments. The plaintiffs sued out a
writ of attachment and had same levied upon
certain property in Ellis and Dallas counties
upon the plea that the defendants had no
property (besides homestead) in Walker coun-
ty subject to execution out of which any judg-
ment in this case could be collected. The at-
tachment was not controverted. The defend-
ants filed a general demurrer and special ex-
ceptions to the petition. The defendants
pleaded a general denial; that the property
in suit was their homestead; that "the plain-
tiffs have negligently, carelessly, and delib-
erately placed improvements on said street in
a manner calculated to and which did dete-
riorate and decrease the value ($1,000) of the
defendants' land and premises [here describ-
ing the improvements complained of]." The
plaintiffs filed a supplemental petition in rep-
lication to the answer. The case was tried
before the court without a jury, and a judg-
ment was rendered for the defendants.
There are no findings of fact by the court.

The evidence is without conflict. The ap-
pellants' evidence consisted entirely of writ-
ings, in the ordinances, resolutions, contract,
plans and specifications, reports, assessments,
and all other proceedings had. All of this
evidence shows a valid order of assessment
and certificate. It is admitted that the par-
ticular property is the homestead of defend-
ants. The paving certificate sued on is dated
July 20, 1923, and is for the total amount of
$1,092.51. The paving was completed and the
work finished July 14, 1923. The defendants
offered oral testimony to the point that their
particular property sustained damages from
$300 to $1,000 by reason of the construction
of the paving improvements laid on the street
in front of their home. The damages claimed
are shown in the testimony of the defendant
W. E. McKay, who testified as follows:

"In paving in front of my property dirt was
removed from the front of my house. A curb
was laid past my house. In piling this dirt in
they took up a water sewer I had under the
sidewalk, and opened the spillway some 15 or
20 feet from the natural course of the branch,
which left about 8 feet for the water to run out
on my property. To remedy this they piled
some rocks in front and left no approach to my
cottage. They also added the curb without ask-
ing me whether or not I wanted an outlet. It
was put in at several dollars more than it should
have cost. The spillway rendered that part of

the street inaccessible, and it was constructed in such a way that I have no egress and ingress. I have to pass over to one side of that pavement. The spillway where those rocks are piled is something like 6 feet wide. The water runs in and across the sidewalk. I now have piled trash in there to protect that. The spillway comes in from an approach and on down the sewer. It appears to me that it should have been put so that it could escape without leaving an unsightly hole 4 or 5 feet deep in front of my house. If the engineering had been planned right that spillway would not have been necessary for drainage purposes. It could have gone down in the regular water course. The opening of the spillway is not much larger than is required to carry away the water that comes from the north side. The rocks and the spillway are 12 feet along there. I think that condition has decreased and depreciated the value of my property. I had a buyer for it the other day, and he refused to buy it on that account unless the city would give him permission to fix it. * * * I am not an engineer. I told McLendon I would not pay for the paving before it was done. I did not refuse to pay for it on account of the manner in which it was put down. The main thing was, I told him, I didn't have the money. I received a notice to appear before the city council, and I appeared before the city council and told them I was not able to pay. That was the reason I protested putting down the pavement in front of my property."

Homer Stephenson, of Houston, and Dean & Humphrey, of Huntsville, for appellants.

P. H. Singeltary and M. E. Gates, both of Huntsville, for appellees.

LEVY, J. (after stating the facts as above). [1, 2] The appellants sued out attachment and caused same to be levied upon certain realty in Dallas and Ellis counties, founded upon the allegation that—

"The defendants W. E. McKay and wife have no property in Walker county subject to execution out of which the judgment that may be rendered herein can be made (the property against which the assessment was made being homestead), but the defendant W. E. McKay has an interest in land in Dallas and Ellis counties," etc..

It was further alleged that—

"The defendant W. E. McKay did on or about May 4, 1923, make, execute, and deliver to Everett McKay a quitclaim deed of conveyance to such land in Ellis and Dallas counties and caused same to be recorded in the deed records, and upon information and belief plaintiffs aver that by said deeds W. E. McKay sought to put title to such property out of reach of his creditors and of the plaintiffs herein."

The petition made Everett McKay a party to the suit, and asked to have the deeds mentioned canceled, as well as to have the attachment lien forclosed upon such lands. The appellees excepted to the above allegations, upon the grounds of misjoinder of causes of action and the lack of jurisdiction in the dis-

trict court of Walker county to try the title to lands situated in Dallas and Ellis counties. The court sustained the exceptions and dismissed Everett McKay from the suit. There was no error in sustaining the exceptions to set aside and cancel the deeds as fraudulent conveyances upon the ground of misjoinder of causes of action. Everett McKay was in nowise responsible for the paving debt. The appellees had the right to have the appellants' suit on a paving certificate simply tried without connection with an entirely different controversy. But the attachment was only an auxiliary process, and the appellants had the right to a judgment of foreclosure of the lien as against any interest of the defendant W. E. McKay in the lands. Whether or not W. E. McKay had any interest in such lands was an issue determinable afterwards in a proper suit.

[3] The assessment certificate sued on was not void as showing upon its face that no assessment had been made until after the paving had been completed. The paving was finished and the work accepted on July 14, 1923. And while the certificate bears the date of July 20, 1923, it has the recital:

"That said assessment was levied by virtue of an ordinance of the city council of said city passed on July 20, 1923, and other proceedings of said city, providing for payment by said owner of his pro rata of the cost of improving avenue K (Main street) under a contract between the said city and W. A. McLendon of date October 25, 1922."

[4-6] The previous ordinances, resolutions, and written proceedings, as prerequisites, appear duly and timely acted on. It is thought that the certificate and the order of assessment are legally valid as in due requirement of the law. Therefore the appellants were entitled to a personal judgment for the paving debt, with foreclosure of the attachment lien against W. E. McKay, unless the defendants were entitled to a judgment, as the trial court determined, upon the ground that there was damage done to the property in the performance of the work entitling the compensation sought therefor. The appellees pleaded, as a defense, damages done to their premises through negligence in the manner of placing the pavement in the street and in the building and digging of a spillway. Appellants argue that the only damages that the appellees are entitled to urge in set-off against the contractor's claim for payment of the certificate held and exclusively owned by him are such damages as resulted from defective performance of the work by him in laying down the pavement in accordance with the particular plans and specifications adopted. And, further, as argued, the evidence of appellees does not show that the damages resulted from failure on the part of the contractor to comply with the plans and specifications and the contract therefor. As alleged and

proven, the contractor is the holder and sole owner of the certificates. The city is party plaintiff only pro forma.

It is thought that the appellants' contention is correct that the appellees' claim for damages in this suit in set-off to the action on the paving certificate must rest upon defective performance of the work by the contractor as called for by the plans and specifications of the contract. One under contract to do work under particular plans and specifications, as the appellant McLendon was, is bound to execute it in a good and workmanlike manner; and, if from result of bad workmanship the work is utterly defective, or not in compliance with the plans and specifications, he is entitled to nothing, but is liable for any damages his lack of skill and faithfulness may have caused. As a rule, one who does merely defective work may generally recover the contract price, less the cost of correcting the defects. Appellees seem to concede this rule, and insist that they have shown damages resulting from negligent performance of the work. The evidence, though, does not show that the contractor did not do the work as intended and contemplated by the contracting parties in compliance with the plans and specifications determined upon for him to follow. Laying "a curb past my house" and erecting "the spillway some 15 or 20 feet from the natural course of the branch" and piling "some rocks in front" of the spillway and leaving "no approach to my cottage" might have been, for aught that appears, in compliance with the contract. All such may have been according to the agreed manner of construction and quality of material. Removing "dirt from the front of my house" and taking up "a water sewer under the sidewalk" may have been required by the plans. The burden of proof was upon the appellees to show a liability of the contractor. The plans in the first instance adopted by the city for lowering or raising the grade and erecting culverts or spillways may or may not have been so devised as to injuriously affect the value and use of a particular property abutting the general improvement. If so, then under such circumstances the city might be held liable for the special damages in a distinct action therefor, as in the nature of specially damaging private property in public use. But the contractor would not be liable for special damages in such case, in faithfully complying with and following the plans and specifications adopted and determined upon by the city. And the contractor would be legally entitled to have all the money raised by the assessment applied to the payment for the particular work. The distinctive liability of the city, if existing, for special damages of the particular character mentioned, could not be used in set-off to the separate claim of the contractor in compensation for the work done; he being in nowise legally responsible for the city's debt or liability in such case.

The facts in the record not being sufficient to support the judgment in favor of appellees against the contractor, the judgment will be reversed, and the cause remanded.

### On Rehearing.

It is believed that the appellants were entitled to have the judgment reversed and rendered. It is accordingly ordered that the judgment be reversed, as before ordered, but that judgment be here rendered in favor of appellants for the amount of the debt, principal, interest, and attorney's fees, and for foreclosure of the attachment lien against W. E. McKay on the lands described in the attachment proceedings, together with all costs in the trial court and of appeal.