Richard W. GORSALITZ et ux., Appellants,

v.

Dr. G. G. HARRIS, Appellee.

No. 246.

Court of Civil Appeals of Texas.

Tyler.

Dec. 15, 1966.

Rehearing Denied Jan. 26, 1967.

Second Rehearing Denied Feb. 16, 1967.

John H. Holloway, Houston, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, Jerry V. Walker and Tom Normand, Houston, for appellee.

SELLERS, Justice.

This is a suit by Richard W. Gorsalitz and wife to recover on a malpractice count against defendant Dr. G. G. Harris. We find this statement in Appellee's Brief:

"The trial judge suggested the damage issues be separated in submitting this case to the jury so as to bring this lawsuit to a conclusion after four trials and one appeal, and both parties agreed."

The former appeal of this case was to the Court of Civil Appeals at Houston and is reported in Volume 360 S.W.2d 574 where a full statement of the facts on that appeal will be found. The judgment appealed from there was from an instructed verdict for

the defendant. The appeals court affirmed the judgment in their original opinion and then on Motion for Rehearing held:

"In their amended motion for rehearing appellants have called our attention to certain fact issues which we failed to consider in the foregoing opinion. There is ample evidence raising a fact issue as to whether the leaving of the root tip in Mrs. Gorsalitz's gum or sinus constituted negligence on the part of appellee. We adhere to our original opinion that there is no medical testimony that any such negligence probably caused the conditions necessitating the closure of the sinus cavity and the damages resulting therefrom. On reviewing the record we have concluded, however, that there is testimony which would warrant findings that such negligence, if any, necessitated the operation to remove the root tip and was a proximate cause of damages resulting therefrom.

"There is evidence that in removing the root tip, appellee made an incision in Mrs. Gorsalitz's gum and then sewed it up, and that she was in appellee's office some 45 minutes to an hour and had to return three times before the stitches were removed. After the stitches were removed she was advised to see an oral surgeon to effect a closure of the sinus cavity. It is a matter of common knowledge that the operation for extraction of the root tip necessarily caused some pain or suffering, both physically and mentally. * * *"

Briefly stated, the facts on this appeal are that Mrs. Gorsalitz went to Dr. Harris on July 14, 1958 to have the upper right first molar tooth pulled. The doctor extracted this tooth and in doing so, left a root tip in the gum. In removing this tooth, Dr. Harris broke the floor of the sinus chamber which is not uncommon in removing this tooth according to Dr. Curl, the dental surgeon who testified in the case. Dr. Harris denied leaving this root tip in the gum of Mrs. Gorsalitz but the jury found that he

did on ample evidence. After the removal of the tooth, Dr. Harris was able to effect a closure of the cavity from which the tooth was removed but not the bone tissue going into the sinus chamber. No further trouble was experienced by Mrs. Gorsalitz until in September 1959 when she went to Dr. Rosenbloom for dental work, and this doctor who testified on the trial found a root tip in Mrs. Gorsalitz's gum and advised having same removed at once as it could cause trouble. Mrs. Gorsalitz then went back to Dr. Harris and advised him of what Dr. Rosenbloom had found, and Dr. Harris said he would remove the same. This he did, and thereafter was unable to effect a closure after the operation to remove the root tip. Dr. Harris then advised Mrs. Gorsalitz to go to Dr. Curl, a dental surgeon, to have the closure operation performed, this not being in Dr. Harris' field of practice. It was some two weeks after this last extraction of the root tip before she was sent to Dr. Curl. Dr. Curl testified that it was proper practice for a dentist to try for some two weeks to effect a closure before sending the patient to a dental surgeon.

On October 13, 1959, Dr. Curl, aided by Dr. Lawrence, an Eye, Ear, Nose and Throat Specialist, performed the operation to close the opening made by Dr. Harris when he removed the root tip. At the time of this last operation, the sinus had become infected, and that was the reason that Dr. Lawrence was called in to help Dr. Curl with the operation. The operation was performed and the closure effected. There is no testimony by any of the five doctors who testified in this trial that Dr. Harris was in any way responsible for the infection that existed in Mrs. Gorsalitz's sinus at the time of this last operation. The same doctor who testified on the first trial which was appealed to the Houston Court testified on this trial and we refer to the report of that case for a full statement of the evidence of the doctors on this trial. Two additional dentists testified on this hearing, but their evidence was largely cumulative of that given and reported in the other appeal. The first

three issues submitted by the Court to the jury found that Dr. Harris did leave the root tip in Mrs. Gorsalitz's jaw when he extracted her tooth and that this was negligence and was a proximate cause of an injury to her body. Special Issue No. 4 was as follows:

"What sum of money, if any, paid now in cash do you find from a preponderance of the evidence will fairly and reasonably compensate the Plaintiffs for the damages, if any, which have resulted from such injuries, if any, to the Plaintiff, Mrs. Pauline Gorsalitz, as you find from a preponderance of the evidence were directly and proximately caused by the Defendant leaving one of the root tips from her upper right first molor, if you have found that he did so leave one of such root tips, taking into consideration such of the following elements of damage, if any, as you find or establish by a preponderance of the evidence, and none other:

"(a) Such physical pain, if any, as you find from a preponderance of the evidence was directly caused by the injuries, if any, to the Plaintiff, Mrs. Pauline Gorsalitz, as a direct and proximate result of the leaving of the root tip from her upper right first molar, if you have found that it was left?

"(b) Such mental anguish, if any, that you find from a preponderance of the evidence was directly caused from the injuries, if any, to the Plaintiff, Mrs. Pauline Gorsalitz, as a direct and proximate result of the leaving of the root tip from her upper right first molar, if you have found that it was so left?

"Answer by stating the amount, if any, in dollars and cents.

"You are instructed, in connection with the foregoing Special Issue No. 4, that in arriving at the amount of money, if any, which would compensate the Plaintiffs for their damages, if any, you will not take into consideration or make any al-

lowance for any hospital, doctor, dentist or medical expenses of any kind or character, and you are further instructed that you will not take into consideration or make any allowance for any physical pain or mental anguish, if any, which were incurred in connection with the operation performed by Dr. Carroll A. Curl and Dr. Van L. Lawrence on or about the 15th day of October, 1959."

The jury in answer to Special Issue No. 4 assessed the damage at $2,000.00 and no complaint is made on this appeal as to that verdict.

The Court then submitted Special Issue No. 5 as follows:

"Do you find from a preponderance of the evidence that leaving of such root tip, if you have so found, was a proximate cause of the condition which necessitated the operation of October 15, 1959 performed by Drs. Curl and Lawrence."

This issue was answered in the affirmative, and the damages assessed by the jury in answer to Special Issue No. 6 were in the amount of $8,000.00. The appellee made a motion to disregard the answer of the jury to Issues Nos. 5 and 6 and to render judgment non obstante veredicto for appellee, denying the appellant the recovery of the $8,000.00 for the reason that there was no evidence that Dr. Harris, by leaving the root tip in Mrs. Gorsalitz's jaw, caused the operations by Drs. Curl and Lawrence. This motion was granted by the Court and judgment was entered for Mrs. Gorsalitz and her husband for the sum of $2,000.00. From this judgment they have duly prosecuted this appeal.

The appellants' first assignment of error is as follows:

"The trial court erred in granting Appellee's Motion for Judgment Non Obstante Veredicto and/or Motion to Disregard the jury findings to Issues 5 and 6 so as to deny Appellants $8,000.00 damages based upon jury findings supported by the evidence and pleadings."

Appellants in their brief, set out this evidence of Dr. Curl as being sufficient to support the jury's finding that the removal of the root tip caused Dr. Curl's operation:

"Dr. Curl's testimony in regards to the necessity for the operation, can be summarized by his testimony at page 191 of the Statement of Facts:

"'Q. * * * Assuming that during the fourteen months Mrs. Gorsalitz had a complete closure of the gum in the area of the upper first molar—

Now, if that is true, and with this complete closure, would there be any necessity for the operation that you performed on her if that had not been opened again?

"'A. No sir.

"'Q. All right. So that your operation and the operation performed by Dr. Lawrence was solely caused because of the opening of that gum? Is that correct?

"'A. Yes, sir.

"'Q. That is your medical opinion, Doctor? . . . .

"'A. Yes, sir.' "

There can be no question but that the taking out of the root tip caused the operation (by Dr. Curl) to close the floor of the sinus, as the doctor has just above stated, but there is not a line of evidence by either doctor who testified that Dr. Harris did anything wrong in extracting the root tip, but the evidence is that it was proper for him to remove the root tip as he did, and further, when he was unable to secure a closure in two weeks, it was proper practice to send the patient to an oral surgeon to secure a closure, which he did.

■ It is well settled in this State that in order to recover for malpractice, there must be evidence by a doctor of the same school of medicine as the defendant that the diagnosis or treatment complained of was such as to constitute negligence.

The evidence in this case by all of the doctors is to the effect that this root tip which had been in Mrs. Gorsalitz's jaw for better than a year and might have remained there for years without any injury to Mrs. Gorsalitz, yet they all agree that when it was discovered it was proper practice to remove the same. The hole in the floor of the sinus which Dr. Curl was called upon to close was a result of the pulling of the tooth by Dr. Harris. The root of the tooth had extended into the sinus chamber and when the tooth was removed, the floor of the sinus chamber was left with a hole in the same. This is not uncommon according to Dr. Curl.

■ We have carefully reviewed the evidence of all of the doctors who testified and in our opinion there is no evidence to support the jury's answer to Special Issues Nos. 5 and 6, and the trial court was correct in disregarding the same and rendering judgment for appellee. We are supported in this holding by the Court of Civil Appeals on the former appeal of this case. Gorsalitz v. Harris, 360 S.W.2d 574. Whatever error there might have been in the way the trial court submitted this case to the jury cannot be complained of on this appeal since the appellants' counsel agreed to such submission. Reynolds et al. v. McMan Oil & Gas Co. et al., Tex.App., 11 S.W.2d 778.

Finding no error in the record, the judgment of the trial court is affirmed.